IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| BRIAN CHIVAS JAMES | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil No. 8:11-cv-00271-JSM-AEP |
| | ) |
| UNITED STATES OF AMERICA | ) |
| | )   **DISPOSITIVE MOTION** |
| Defendant. | ) |

## <u>DEFENDANT UNITED STATES' MOTION FOR SUMMARY JUDGMENT</u>

The United States of America respectfully moves the Court, pursuant to Federal Rule of Civil Procedure 56(a) to enter summary judgment against Plaintiff Brian Chivas James. The undisputed material facts demonstrate that James's failure to timely file the proper forms reporting his interest in a foreign trust to the IRS for the tax years 2001, 2002, and 2003 was not due to reasonable cause because his professed reliance on an agent to file those forms fails to meet his burden to establish reasonable cause as a matter of law. Those facts also demonstrate that James's failure to file was not the result of an inability to comply. Therefore, the Court should enter judgment that he take nothing by this suit.

In support of this motion, the United States incorporates the following Memorandum of Law in Support, and attaches the depositions of Plaintiff Brian Chivas James, Stephen

Donaldson, and Joshua Crithfield as Government Exhibits A, B, and C, respectively, along with Exhibits 4, 10, 16, 19, 20, 22, 23, 46, 47, 48, 49, 50, 51, 52, and 53.[1]

## MEMORANDUM OF LAW IN SUPPORT

### Introduction

Plaintiff Brian Chivas James filed this action seeking a refund of civil tax penalties assessed against him by the IRS for failing to file returns required by the Internal Revenue Code.  As the grantor of the Hornsby Trust, a foreign trust established in Nevis, West Indies in 2001, James was required by Section 6048 of the Internal Revenue Code to file IRS Forms 3520, Annual Return to Report Transactions with Foreign Trusts and Receipt of Certain Foreign Gifts, ("Form 3520") for the years 2001, 2002, and 2003.[2]  The returns were due to be filed no later than April 15 of each succeeding year. 26 C.F.R. § 404.6048-1(c)(i); I.R.S. Notice 97-34, 1997-1 C.B. 422.  James, however, filed his forms on April 26, 2005, after receiving notice of that failure from the IRS.  Because he failed to establish to the IRS that his failure to timely file those returns was due to reasonable cause and not due to willful neglect, on October 16, 2006, a delegate of the Secretary of the Treasury assessed civil penalties against James for that failure to file pursuant to Section 6677 of the Internal Revenue Code.  Following an unsuccessful administrative appeal of the penalty assessments

---

[1]All personal identification numbers in the exhibits have been redacted as required by Fed. R. Civ. P. 5.2.

[2]This form is distinct from the Form 3520-A, Annual Information Return of Foreign Trust With a U.S. Owner ("Form 3520-A"), which Section 6048 requires be filed by each foreign trust with a United States owner.

within the IRS, James paid the penalties, filed claims for refund, and instituted this action for a refund of the penalties on the grounds that his failure to file was due to reasonable cause and not due to willful neglect.  Because the undisputed material facts which follow demonstrate that his failure to file those returns was *not* due to reasonable cause, the Court should enter summary judgment in favor of the United States.

**Undisputed Material Facts**

Preparation for Establishment of the Hornsby Trust

Brian Chivas James is a surgeon with a pain management practice in Sarasota, Florida.   (James Dep. 86:3-25.)  In 2000, shortly after a divorce, James began to consult with Stephen P. Donaldson, of Foster & Dunhill, Ltd., about creating a foreign trust to protect his assets from potential malpractice victims.  (James Dep.19:21-20:19; 111:4-10; 128:14-22.)  At no time did James do any research to determine his IRS filing requirements should he establish a trust.  (James Dep. 19:20-23.)  Nor did James ask the people who helped him establish his foreign trust what his internal revenue filing requirements might be as owner.  (James Dep. 33:8-12.)  When Donaldson informed James that owners of foreign trusts were required to file certain returns with the IRS, James referred Donaldson to the accountant, George Famiglio, who normally prepared his individual income tax returns.  (James Dep. 19:17-20:9; 117:8-22; 7:13-8:3; 8:15-9:13.)

Donaldson remembers speaking to James's accountant about the proper way to report James's foreign trust on his Form 1040, Individual Income Tax Return, and may also have

discussed the requirement to file a Form 3520, as well.  (S. Donaldson Dep. 32:1-13.)[3] Donaldson later confirmed to James that he had spoken to the accountant, but did not provide James with any of the details of that conversation.  (James Dep. 101:24-102:19.)

Prior to establishing his foreign trust, James told George Famiglio of his intention to create a foreign trust with Donaldson's help.  (James Dep. 128:23-130:6.) According to James, Famiglio appeared upset that James had sought such assistance from Donaldson since Famiglio claimed to know a person that could have helped James set up the trust.  (James Dep. 128:23-130:6.)[4]

Establishment of the Hornsby Trust and Compliance Package

After the initial meeting(s) with Donaldson in the Tampa area, James traveled to the Bahamas, where he executed a trust deed establishing the Hornsby Trust on January 4, 2001. (James Dep. 113:12-114:1; Ex. 4.)  The Hornsby Trust is an irrevocable trust and First Fidelity Trust Limited (FFT) is its trustee.  (Ex. 4.)  James initially funded the trust in 2001 with contributions of $192,000, and made additional contributions totaling $805,000 and $607,146 to the trust in 2002 and 2003, respectively.  (Exs. 10, 20, 22, 23, 46, 47.)

At the time he executed the trust deed establishing the Hornsby Trust, James signed a "Compliance and Notification Package for United States Taxpayers" produced by FFT.

---

[3]The United States accepts Donaldson's account of speaking to James's accountant as true only for the sake of this motion.

[4]The United States also accepts as true only for the sake of this motion that this conversation took place as described.

(James Dep. 114:18-22; Ex. 4 at OTS-James 000041 - OTS - James 000046.)  Section One of the compliance package is entitled "Internal Revenue Service Forms" and specifies that FFT will prepare the annual Form 3520-A required to be filed by the Hornsby Trust.  That section instructed James, as grantor, to "examine the IRS Form 3520 and make an annual determination on whether you or any of the beneficiaries you have listed in your trust deed are required to file this form."  (Ex. 4 at OTS-James 000042.)  James signed the acknowledgment indicating he was " notified of the following forms and the possibility that one of [sic] more of these forms must be filed . . . .  1.  Form 3520 'Annual Return to Report Transactions with Foreign Trusts and Receipt of Certain Foreign Gifts.'" (*Id.*;  James Dep. 121:5-122:6.)

The fourth section of the compliance and notification package is a "Warranty of Understanding and Compliance."  It includes a number of warranties James made as the grantor of the trust.  Item number 5 warrants "that I [James] understand that establishing a foreign trust can obligate me to file certain Internal Revenue Service and Treasury Department forms, including, but not limited to IRS Form 3520 and IRS Form 3520-A." (Ex. 4 at OTS - James 000046; James Dep. 115:15-116:3.)

<u>Failure to File Required Returns</u>

Despite receiving notice of his reporting requirements, James never took any action to file his Forms 3520 as the owner of the Hornsby Trust for the years 2001, 2002, and 2003. (James Dep. 28:9-23; James Dep. 120:2-13.).  James did so only after receiving notice from

the IRS in January of 2005 that his Forms 3520 for those years had not been filed as required by law.  (*Id.*)

Claimed Reliance on George Famiglio

Throughout the years 2001, 2002, and 2003, James's accountant was George Famiglio of Sarasota, Florida.  In addition to preparing James's personal and business income tax returns, George Famiglio prepared financial statements for James's medical practice, prepared the financial records of the business, and, possibly, gave James advice.  (James Dep. 23:25-24:3; 25:1-4; 183:6-16.)  Other than transmitting his financial documents to George Famiglio, James took no action to understand his filing requirements as the owner of the Hornsby Trust.  (James Dep. 18:20-24; 33:3-7.)

James claims that he relied on Famiglio to fulfill his tax filing obligations but cannot remember any specific advice given to him by Famiglio with respect to his filing requirements as the grantor of the Hornsby Trust, and never asked him anything about the topic.  (James Dep. 33:13-20.)  James thinks he may have spoken with Famiglio about his initial consultations with Donaldson about forming a foreign trust, but he cannot remember any other details about his conversations with Famiglio.  (James Dep. 130:9-17.)

The Hornsby Trust's Forms 3520-A

Each year, James was provided a copy of the Hornsby Trust's Form 3520-A from FFT.  (J. Crithfield Dep. 24:10-11:6.)  James does not remember receiving a copy of the Hornsby Trust's Form 3520-A for 2001, but believes that he sent it to George Famiglio.  (James Dep. 40:14-22; Plaintiff's Resp. to Def. Interog. No. 7 (attached as Ex. 48).)

Likewise, James does not remember receiving the trust's Forms 3520-A for 2002 and 2003, either, but believes that he sent those to Famiglio, as well.  (James Dep. 43:15-22; 44:8-9; 45:4-8; 49:15-20; 50:13-24; Plaintiff's Resp. to Def. Interog. No. 7.) The third page of all three Forms 3520-A is a statement that shows the amount of the trust's income attributable to James as its U.S. owner, and it includes the statement: "U.S. owner must attach a copy of each statement to Form 3520." (Ex. 20 at OTS - James 000051, Ex. 21 at SAB0116, Ex. 10 at OTS - James000059.)

Misrepresentations on Forms 1040

On or about October 15, 2003, James timely filed, with extensions, his 2002 Form 1040 Individual Income Tax Return.  (Ex. 16.)  On or about December 15, 2004, James timely filed, with extensions, his 2003 Form 1040 Individual Income Tax Return.  (Ex. 19) Line 8 of James's 2002 Form 1040, Schedule B asked "did you receive a distribution from, or were you the grantor of, or transferor to, a foreign trust?  If 'yes,' you may have to file Form 3520."[5]  James answered "no," which he admits was incorrect.  (Ex. 16 at IRSADMIN000009; James Dep. 74:14-75:2.)  The same line of James's 2003 Form 1040, Schedule B asked the same question, to which James also answered "no." (Ex. 19 at IRSADMIN000034; James Dep. 83:12-22.)  James admits that his 2003 response was also incorrect.   (James Dep. 83:12-22.)  James qualified his admissions by claiming in the errata

---

[5]No party was able to produce a copy of Dr. James's Form 1040 for 2001.

sheet attached to his deposition transcript that the representation was incorrect, "but at the time I did not know it was not correct."  (James Dep. 75:2, errata; 83:22, errata.)

Attendance at the Conference in Cabo San Lucas

After establishing the Hornsby Trust, in September of 2002, James attended a conference in Cabo San Lucas sponsored by Donaldson's company, Foster & Dunhill on issues related to foreign trusts such as the Hornsby Trust.  (James Dep. 95:23-96:3; S. Donaldson Dep. 25:17-21; Ex. 49.)   That conference included at least one presentation on a foreign trust owner's responsibility to comply with United States internal revenue laws, including descriptions of the Forms 3520-A and 3520.  (S. Donaldson Dep. 29:4-15; J. Crithfield 29:2-9.)  James did not attend that session.  (James Dep. 97:18-20.)

Assessment and Payment of Civil Penalties

Having received the Hornsby Trust's Forms 3520-A for the years 2001, 2002, and 2003, the IRS was aware of the existence of the Hornsby Trust, and the identity of James as its owner.  (Exs. 10, 20, 22)  On January 27, 2005, and March 14, 2005, the IRS sent James letters notifying him of his obligation to file Forms 3520 for the years 2001 through 2003. (Ex. 53.)  On October 16, 2006–after James's late-filing of the Forms 3520–a delegate of the Secretary of the Treasury assessed civil penalties in the amount of $67,200, $281,750, and $230,000 against James for his failure to timely file his Forms 3520 as the owner and grantor of the Hornsby Trust for the years 2001, 2002, and 2003, respectively.  (Exs. 50-52.)  Those amounts represent 35% of the amounts transferred by James to the trust and distributed to him from the trust during each of those years.  (Ex. 53.)  *See also* 26 U.S.C. § 6677(a), (c).

James made various payments on those assessments, and fully paid the balance owed, including accrued interest, by April 15, 2009.  (Exs. 50-52.)

## Argument

The United States is entitled to summary judgment because no genuine issue of material fact exists to show that James's failure to timely file his Forms 3520 for 2001, 2002, and 2003 was due to reasonable cause and not due to willful neglect.  "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Only disputes over facts relevant to the ultimate outcome of a case are material.  "Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *See also United States v. Gilbert*, 920 F.2d 878, 883 (11th Cir. 1991). "The burden of establishing that there is no genuine issue of material fact lies with the moving party.  However, once the moving party has met that burden by presenting evidence which, if uncontradicted, would entitle it to a directed verdict at trial, Fed. R. Civ. P. 56(e)[6] shifts to the non-moving party the burden of presenting specific facts showing that such contradiction is possible." *Walker v. Darby*, 911 F.2d 1573, 1576. (11th Cir. 1990) (internal citations omitted).

---

[6]This reference is to the subdivisions of the rule prior to amendments that took effect in December of 2007 and 2010.  The advisory committee commentary to the rule reflects that the "changes are intended to be stylistic only," and "[t]he standard for granting summary judgment remains unchanged." Fed. R. Civ. P. 56 advisory committee's note.

In the attached exhibits and the deposition transcripts of James, Stephen Donaldson, and Joshua Crithfield, the United States has presented evidence setting forth the undisputed materials facts recited above.  The burden now rests with James to specifically demonstrate that there is some dispute as to one of those material facts that would necessitate trial.

In attempting to demonstrate that a genuine issue of material fact exists, James must produce admissible evidence to contradict the material facts upon which this motion is based. The nonmoving party may not rest on mere allegations.  *Moses v. American Nonwovens, Inc.*, 97 F.3d 446, 447 (11th Cir. 1996), *cert. denied*, 519 U.S. 1118 (1997); *Walker*, 911 F.2d  at 1576-77.  Moreover, the courts will not entertain immaterial or insubstantial doubts as to material facts to defeat a summary judgment motion.  *Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986) (nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts").  Rather, an opposing party must come forward with evidence that is "significantly probative," in the sense that it creates an issue which may not be resolved until the trier of fact has the opportunity to assess the credibility of the witnesses.  *Liberty Lobby*, 477 U.S. at 249-250.

Accepting as true for purposes of this motion only, James's claims that he relied on George Famiglio to file the Forms 3520 for 2001, 2002, and 2003, the United States is entitled to judgment as a matter of law.  James's blind reliance on an agent to comply with filing requirements he had previously acknowledged is insufficient to establish his failure to timely file his Forms 3520 for the 2001, 2002, and 2003 tax years was due to reasonable

- 10 -

cause.  Moreover, James lacked reasonable cause for his failure to file because he cannot

show that he was rendered unable to file the required returns by forces beyond his control.

**I.** **James Is Without Reasonable Cause Because His Obligation to File the Form 3520 Was Non-Delegable as a Matter of Law.**

26 U.S.C. § 6048 requires owners of foreign trusts to file certain returns as

determined by the IRS.  The IRS, in accordance with the statute, has provided a two-phase,

belt-and-suspenders approach to the requirements of section 6048 in Public Notice 97-34.

Pursuant to the approach set forth in that notice, the trust is required to file a Form 3520-A,

and the trust owner must file a Form 3520.  I.R.S. Notice 97-34, 1997-1 C.B. 422.  The trust

owner's Form 3520 is due at the same time as his or her federal income tax return for that

year.  I.R.S. Notice 97-34; I.R.S. Announcement 98-30, 1998-17 I.R.B. 38 (Although

typically due April 15 of the succeeding year, an extension to file the income tax return

extends the due date for the 3520 as well).

If the trust owner fails to timely file a Form 3520, or submits an incomplete or

incorrect Form 3520, he or she must pay a penalty of either $10,000 or 35% of the gross

reportable amount, whichever is greater  26 U.S.C. § 6677(a).[7]  However, if the failure to file

_____

[7]Prior to 1996, the maximum penalty for noncompliance was $1,000.  *See* 26 U.S.C. § 66777 (West 1995).  In 1996, Congress amended Section 6677 to increase the penalty.  Small Business Job Protection Act of 1996, Pub. L. No. 104-188, § 1901(b) (codified at 26 U.S.C. § 6677).  The penalty is now a minimum of $10,000, but may be much higher depending on the "gross reportable amount," which, is either the gross value of the property transferred to the foreign trust, the trust's property treated as owned by the U.S. owner, or the amount of distributions from the trust.  26 U.S.C. § 6677(a), (c).  In James's case, the penalty was based primarily on the amount he transferred to the trust.  (Ex. 53.)  The trust owner will owe additional penalties of $10,000 for each month he continues to fail to file the necessary forms

is "due to reasonable cause and not due to willful neglect,"  no penalty shall be imposed.  26 U.S.C. § 6677(d).

Our research has found no case applying the reasonable cause defense under section 6677(d).  There is, however, ample authority applying the reasonable cause defense to other delinquency penalties.  These cases are instructive and establish that James's failure to timely file his Forms 3520 for the years in question was not due to reasonable cause.[8]

### A.      Reasonable Cause.

In general, reasonable cause depends on all the facts and circumstances in the particular situation at hand.  Reasonable cause exists when a taxpayer exercises ordinary care and prudence in determining his tax obligations but is unable to comply. *United States v. Boyle*, 469 U.S. 241, 246 (1985); I.R.M. 20.1.1.3.2 (11-25-2011).  The burden on the taxpayer to establish that the failure to comply was due to reasonable cause is a "heavy" one. *Boyle*, 469 U.S. at 245.  The IRS typically considers a number of factors in determining if a taxpayers' failure to file is due to reasonable cause, including the taxpayer's reason for failing to file, what facts and circumstances may have prevented the taxpayer from filing the return, how those facts and circumstances prevented compliance, how the taxpayer handled the

---

after 90 days pass since receiving notice from the IRS.  *Id.*.  Incidentally, two years after the amendments to section 6677, U.S. taxpayers filed nearly six times as many Form 3520s than they did two years prior (3,282 in 1998 vs. 573 in 1994).  DANIEL S. HOLIK, IRS, FOREIGN TRUSTS, 2002 (2002).

[8]Because the United States is entitled to judgment as a matter of law on the reasonable cause element, the United States does not address whether James's failure to file was due to willful neglect.  The United States does not concede the willful neglect element.

remainder of his or her affairs during the time, and the efforts the taxpayer made to comply after the facts and circumstances changed.. I.R.M. 20.1.1.3.1(5) (11-25-2011).  Nevertheless, the Supreme Court has established a bright-line test to determine reasonable cause where, as here, taxpayers claim their failure to timely file a return was the fault of an agent upon whom the taxpayer relied.  That test affords James no comfort here.

### B.    Reliance on an agent cannot be reasonable cause.

James's assertion that his failure to file was due to reasonable cause hinges on his alleged reliance on George Famiglio to take care of his filing requirements with respect to the Hornsby Trust.  As a matter of law, James has failed to establish reasonable cause because he could not delegate his responsibility to file to Famiglio in the first place, and cannot rightly blame Famiglio for failing to satisfy that obligation.  As the Supreme Court held in *Boyle*, "failure to make a timely filing of a tax return is not excused by the taxpayer's reliance on an agent, and such reliance is not 'reasonable cause' for a late filing."  *Boyle*, 469 U.S. at 252.[9]

---

[9]The United States recognizes that, on its face, *Boyle's* bright-line test applies directly to the late filing penalty under 26 U.S.C. § 6651(a).  This Court should determine that this test extends to the penalty under section 6677(d) for a number of reasons.  First, the same meaning should be given to section 6677 as 6651 where they have used identical words. "[T]here is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning."  *Helvering v. Stockholms Enskilda Bank*, 293 U.S. 84, 87 (1934).  Second, Congress' intent to incorporate the Court's interpretation of the reasonable cause exception in 6651(a) into that of 6677(d) should be inferred from its use, after *Boyle*, of identical language – "due to reasonable cause and not due to willful neglect." The exception provision in 6677(d) was amended to its current wording in 1996, more than 10 years after the Court's decision in *Boyle*.  *See* Small Business Job Protection Act of 1996, P.L. 104-188; *see also Bragdon v. Abbott*, 524 U.S. 624, 645 (1998) (when "judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its . . .

James's case quite simply fails this bright-line test.  James asserts that although he was unaware of his need to file a Form 3520, he had informed his accountant of the trust, provided him with relevant materials, and trusted him to take care of all IRS reporting.  This is insufficient to establish reasonable cause because, under *Boyle*, James (not Famiglio) was responsible to ensure that all reporting was completed.  If James trusted Famiglio to do so, he did so at his peril.

Furthermore, James cannot argue that his failure to file was based on reasonable reliance on erroneous advice.  *Boyle* drew the distinction between advice on whether a return had to be filed and the filing of the return itself.  *Id.* at 250  Reliance on advice that a return was not required could constitute reasonable cause under appropriate circumstances, but James has never said that Famiglio advised him no Form 3520 was required.  Rather, James has simply and repeatedly asserted that he trusted Famiglio to take care of an obligation the trust materials he received from FFT advised was *his*.  Indeed, James admits that he never

judicial interpretations as well.").  Third, administrative practicalities require a bright-line test of no reasonable cause for reliance on an agent.  As noted by the Court in *Boyle*, in administering the tax code, both the IRS and taxpayers need a "rule with as 'bright' a line as can be drawn."  *Boyle*, 469 U.S. at 248.  Although the standard of reasonable cause dictates that the IRS (and Courts) must usually determine whether a specific taxpayer failed to exercise ordinary care under his or her unique circumstances, such an analysis is simplified when the taxpayer's claim is one of reliance on an agent to take care of the filing–in which cases there will be no reasonable cause.  Such a rule also clarifies that taxpayers retain their responsibility to make sure all required forms are filed even when hiring a professional to prepare those forms.

asked Famiglio what his filing requirements as owner of a foreign trust might be. (James Dep. 33:13-20.)[10]

Therefore, this Court should grant summary judgment to the United States because of James's failure, under *Boyle*'s bright-line test, to establish reasonable cause. Indeed, because the facts recited above are undisputed, the application of the *Boyle* standard to those facts is a simple question of law to be resolved in the United States' favor. *Boyle*, 469 U.S. at 249, n.8; *A Better Plumbing Service, Inc. v. United* States, 533 F. Supp. 2d 1233, 1244 (N.D. Ga. 2008) (summary judgment where corporation lacked reasonable cause to avoid section 6651(a) penalties even though bookkeeper embezzled company funds to fund her drug addiction); *Wesley v. United States*, 369 F. Supp. 1328 (N.D. Fla. 2005) (summary judgment that taxpayer husband and wife who relied on accountant lacked reasonable cause); *Atlas Therapy, Inc. v. United States*, 66 F. Supp. 2d 1203, 1209 (N.D. Ala. 1999) (summary judgment that taxpayer corporation lacked reasonable cause under *Boyle* where third-party agent hired to handle payroll taxes failed to file timely returns and falsified statements to hide non-payment of taxes from taxpayer); *Cundiff v. United States*, 1993 U.S. Dist. LEXIS

---

[10]A line of cases have examined whether a taxpayer's reliance on advice of a professional might negate certain negligence penalties under the Internal Revenue Code. *See, e.g., Allison v. USA*, 80 Fed. Cl. 568, 582 - 585 (2008)(discussing numerous cases involving whether taxpayer's reliance on professional's advice constitutes negligence.) These cases are inapplicable not because they involve accuracy-related negligence penalties as opposed to a reasonable cause exception to a late filing penalty because many of those cases cite *Boyle's* discussion of reasonable reliance on advice. *Id* at 583. Those cases *are* rendered inapplicable by James's admission that he neither sought nor received any advice from Famiglio about whether he had to file a 3520.

19663 at * 9 (W.D. Va. 1993) (summary judgment appropriate under *Boyle* where taxpayer's stated reason for late filing was reliance on agent).

    **C.**    ***Boyle's* rationale includes the Form 3520.**

       James may argue that the rationale underlying *Boyle* renders it inapplicable in this case because it involves a highly-specialized information return of a foreign trust which relatively few taxpayers are required to file.  In *Boyle*, the Court observed that "one does not have to be a tax expert to know that tax returns have fixed filing dates and that taxes must be paid when they are due."  *Boyle* 469 U.S. at 251.  James may argue that a person has to be a tax (or foreign investment) expert to know about the Form 3520.  Such an argument disregards 2 key features of *Boyle*'s rationale, especially in light of the facts of this case.

       First, "Reliance by a lay person on a lawyer is of course common; but that reliance cannot function as a substitute for compliance with an unambiguous statute."  *Id.* at 252.  Section 6048 of the Internal Revenue Code is unambiguous that foreign trust owners must file the returns determined by the IRS.  This statute clearly and unambiguously places a burden on those owners to ascertain their filing requirements and comply with them.  *See Boyle*, 469 U.S. at 249 ("Congress intended to place upon the taxpayer an obligation to ascertain the statutory deadline and then to meet that deadline.").  Therefore, *Boyle's* over-arching rationale applies with equal force here, regardless of how negligent the taxpayer's agent might be or that only a certain class of taxpayers is required to file the return in question.  Indeed, the statute places on the trust owner responsibility not only for his own return, but also for that of the trust.  26 U.S.C. § 6048(b).  The reasonable cause exception

- 16 -

would swallow this clear rule if the owner could avoid his responsibility simply by claiming to have relied on an agent to take care of it.

Second, the Court also observed in *Boyle* that "It requires no special training or effort to ascertain a deadline and make sure that it is met." *Id.*   In other words, the Court was pointing out a key distinction between completing a return, which might require special training and effort, and merely being aware of a return and its deadline.  This same logic applies to the Form 3520.  It requires no special training or special effort on the part of a person establishing a foreign trust to ascertain what IRS forms might be required for such a trust.  Indeed, in this case, James was given multiple notifications of the Form 3520's existence and his need to file it.  He simply failed to heed those notifications or take any action to ensure that the form was filed.  No special expertise was needed for the actions that would have been necessary to ensure that George Famiglio completed the forms or, if he did not, to hire someone else to take care of it.  Therefore, the Court should determine that *Boyle's* rationale applies equally to the Form 3520 as to the returns encompassed by I.R.C. section 6651(a).

**D.     It is irrelevant that Form 3520 is an information return.**

We anticipate that James may also argue that *Boyle*'s bright-line should not apply to James's failure to file his Form 3520 since it is an "information" return and not a "tax" return.[11]  Chapter 61, Part III of the Internal Revenue Code provides for the filing of a number

---

[11]Should James make such an argument, it would appear to be a novel one.  However, several cases have applied *Boyle's* rationale and discussion of reasonable reliance on advice

of "information" returns, as distinct from "tax" returns as set forth in Part II of that chapter. *See, generally*, 26 U.S.C. §§ 6031-6060 (information returns), 6011-6021 (tax returns); *see also Ryan v. Bureau of Alcohol, Tobacco, and Firearms*, 715 F.2d 644, 646-647 (2d Cir. 1983) (discussing the distinct purposes of tax and information returns in determining if the form at issue was an information return).  This distinction is irrelevant with respect to the principle of non-delegation embodied in *Boyle* and there is no authority for the  proposition that *Boyle's* bright-line does not apply to information returns that the Internal Revenue Code requires be filed.  Indeed, with respect to at least the information return at issue in this case, Congress left no ambiguity as to where responsibility for filing lies–it is with the trust owner. 26 U.S.C. § 6048.  To allow a trust owner to avoid his or her responsibility for failing to file a Form 3520 simply by claiming to have relied on someone else to file it would negate that clear intent, would create administrative impracticalities, and would make no more sense than with any tax return for all the reasons identified in *Boyle*.  Therefore, the Court should decline any invitation by James to disregard *Boyle's* bright-line on the grounds that it should not apply to the Form 3520 simply because it may be an information return and not a tax return. Because James's basis for reasonable cause fails that bright-line, the Court should enter summary judgment for the United States.

---

of a professional in the context of information returns.  *Addington v. Comm'r*, 20 F.3d 54, 58-59 (2d Cir. 2000) (*Boyle's* discussion of reasonable reliance on advice of professional applied to partnership information return); *Alpha I, L.P. v. United States*, 93 Fed. Cl. 280, 313-314 (Ct. Fed. Cl. 2010) (same).  If *Boyle* applies to information returns with respect to the reasonable reliance on professional advice, it's standard of non-delegation of the duty to file should equally apply to such returns.

II.     **James Lacks Reasonable Cause Because He Was Able to Comply**.

James also lacks reasonable cause because he had the ability to comply, but simply failed to satisfy the obligation the law conferred upon him.  Reasonable cause has two components - (1) the exercise of ordinary care, and (2) an inability to comply.  *See Better Plumbing*, 533 F. Supp. 2d at 1237-38 (N.D. Ga. 2008).  In a footnote, *Boyle* leaves open the possibility that even though a taxpayer who relied on an agent to prepare a return would lack reasonable cause for that reason, his or her non-compliance might be excused by an inability to comply.  See *Boyle*, 469 U.S. at 248, n.6.  Subsequent cases have elaborated on what might constitute such an inability, or disability.  Under these cases, it is clear that James's non-compliance was not the result of any inability.

A.     **"Disability" as reasonable cause**.

In *Brown v. United States*, 630 F. Supp. 57 (Mid. D. Tenn. 1985), the court found that reasonable cause excused the taxpayer's late filing of his deceased sister's estate tax return because he was not capable of exercising ordinary care to ensure that it was timely filed.  In *Brown*, the taxpayer was a 78 year-old retired electrician with a high school education who was in poor health, and the attorney he had hired to prepare the return became ill around the time it was due.  *Brown*, 630 F. Supp at 60.  The court found that the taxpayer's own physical and mental limitations combined with the unexpected illness of his attorney to create a disability that excused the untimely filing.  *Id.*

In *Huszgah v. D'Amico*, 846 F. Supp. 1352 (N. D. Ill. 1994), the court suggested without deciding that the taxpayer had reasonable cause for failing to file her income tax

return on account of incapacity.  Huzgah was an elderly woman in poor health and waning

mental capacities, who had relied on her son to file the return in question.  *Huszgah*, 846 F.

Supp. at 1358.  Because a disputed issue of fact as to her capacity to comply remained for

trial, the court denied the Government's motion for summary judgment *Id.*  In doing so, the

court suggested that if the facts presented on summary judgment were established at trial,

they would constitute a disability establishing reasonable cause for the untimely filing.  *Id.*

Finally, in *Erickson v. Commissioner*, 172 B.R. 900 (Bankr. D. Minn. 1994), a

quadriplegic taxpayer was found to have reasonable cause for his untimely filed income tax

returns because his physical disability rendered him unable to timely file.  172 B.R. at 909-

910. Specifically, it was impossible for the taxpayer to physically complete the returns, and

he could not access the bookkeeper's office to ensure that they were being prepared. *Id.* at

910.  Furthermore, the taxpayer's telephone communications with the bookkeeper led him to

believe that extensions were being obtained so that the returns would be timely filed.  *Id.*

Nevertheless, in spite of his disability, the court found that the taxpayer lacked reasonable

cause for failing to file W-2 payee statements and 1099 information returns for his employees

and contractors because he failed to show a willingness to assume responsibility for filing

and did not take steps necessary to ensure that those forms were properly filed.  *Id* at 911.

### B.    James's lack of "disability."

What is clear from these cases is that James does not fit within *Boyle's* "disability"

provision.  James has asserted that he could not have completed the required forms if he had

known about them.  This is clearly not the type of disability which the cases excuse.  As

reflected above, those cases excuse as unable to comply those who, out of infirmity of mind or body, cannot understand their filing or payment obligations or simply cannot physically comply.  "[T]he type of disability required here is 'one that because of severity or timing makes it virtually impossible for the taxpayer to comply -- things like emergency hospitalization or other incapacity occurring around tax time.'"  *Wesley*, 369 F. Supp. at 1332 (summary judgment that lawyer suffering from prostate cancer but working full-time was not "disabled" so as to excuse failure to timely file income tax return).  James is a highly-educated, practicing surgeon who is in good health.  He does not claim to be infirm of mind or body, but merely claims to lack expertise in the area and to have relied on an agent to provide the necessary expertise.  This is not a "disability" as contemplated by *Boyle's* footnote and as applied in the cases.

Indeed, the facts of this case do not establish that James's noncompliance was the result of forces beyond his control, but were merely the results of his own deliberate ignorance.[12]  Disability excuses the failure to comply when "the taxpayer, for reasons beyond

---

[12]The Court should also reject any argument James might make that his ignorance, combined with the failure of his trusted accountant to prepare the forms constitutes reasonable cause.  In making its determinations of reasonable cause, the IRS generally considers ignorance of the law not to be reasonable cause, because ordinary care and prudence dictates that taxpayers are expected make reasonable efforts to determine their internal revenue reporting obligations.  *See* I.R.M. 20.1.1.3.2.2.6  (11-25-2011).  Nevertheless, ignorance of the law combined with other facts and circumstances may constitute reasonable cause.  *Id.*  The taxpayer may have reasonable cause for noncompliance due to ignorance of the law if he made a reasonable and good faith effort to comply with the law, or the taxpayer was unaware of a requirement and could not reasonably be expected to know of the requirement.  *Id.*  Under those standards, James's professed ignorance of his obligation to file Form 3520 does not constitute reasonable cause.  First, because he couples

his control, has been unable to exercise ordinary business care and prudence." *Brown*, 630 F. Supp at 60.  James may argue that his ignorance of his need to file the Form 3520, coupled with his reliance on an accountant that let him down, rendered him unable to comply.  The Court should reject any such cynical attempt by James to avoid his failure to meet his filing obligations in light of the kinds of disability clearly contemplated by *Boyle* and its progeny. Regardless whether James knew about the Form 3520 or how to complete it, he *was* fully capable of knowing of his obligation to report his interest in the Hornsby Trust and making sure that his accountant completed the appropriate form to satisfy his responsibilities in that regard.  Indeed, James received ample notifications of the Form 3520 requirement, and acknowledged, in writing, that he understood his responsibility to file one.  James simply overlooked or ignored those notifications.  The only way disability would excuse his failure to file was if he was incapable of understanding that the Form 3520 was required, or incapable of hiring an adviser to timely prepare it and incapable of ensuring the adviser did so.  That is not the case here.  Consequently, James's failure to file was without reasonable cause and the United States is entitled to summary judgment.

---

his ignorance with the failure of his accountant, his claim runs afoul of *Boyle's* bright-line. Second, James could be reasonably expected to have known of the Form 3520 because he was given multiple notifications of its existence and of his need to file it.  That he failed to heed those notifications or seek further information demonstrates that his ignorance, like his failure to file, is without excuse.

**Conclusion**

James failed to timely file his Forms 3520 for 2001, 2002, and 2003, and he cannot establish that his failure was due to reasonable cause because he was able to comply and could not delegate his responsibility to file to George Famiglio.  Therefore, the Court should determine that James take nothing by this suit and enter judgment in favor of the United States.

Dated: March 2, 2012                              Respectfully Submitted


                                                  JOHN A DICICCO
                                                  Principal Deputy Assistant Attorney General

                                          By: s/ Michael W. May
                                                  MICHAEL W. MAY
                                                  Trial Attorney, Tax Division
                                                  U.S. Department of Justice
                                                  Post Office Box 14198
                                                  Ben Franklin Station
                                                  Washington, D.C.  20044
                                                  Telephone: (202) 616-1857
                                                  Facsimile: (202) 514-9868
                                                  e-mail: michael.w.may@usdoj.gov

                                                  Of counsel:
                                                  ROBERT E. O'NEILL
                                                  United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2012, I electronically filed the foregoing DEFENDANT

UNITED STATES' MOTION FOR SUMMARY JUDGMENT with the Clerk of the Court by

using the CM/ECF system, which will give notice of such filing to:

> Patricia A. Gorham
> SUTHERLAND ASBILL & BRENNAN LLP
> 999 Peachtree Street, NE
> Atlanta, Georgia 30309
> Attorney for Plaintiff

and

> Kendall Jones
> Dwaune Dupree
> SUTHERLAND ASBILL & BRENNAN LLP
> 1275 Pennsylvania Avenue NW
> Washington, D.C. 20004
> kendall.jones@sutherland.com
> dwaune.dupree@sutherland.com

> s/ Michael W. May
> MICHAEL W. MAY
> Trial Attorney, Tax Division
> U.S. Department of Justice